**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CLASS REPRESENTATION

JULIA YONAN,

      Plaintiff,                           CASE NO.: 0:21-cv-61443-WPD
vs.

WALMART, INC., and
NESTLÊ USA, INC.,

      Defendants.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, JULIA YONAN, individually, and on behalf of all others similarly situated in Florida, by and through the undersigned counsel, hereby files this First Amended Class Action Complaint against Defendant, WALMART, INC. ("WALMART"), and Defendant, NESTLÊ USA, INC. ("NESTLÊ"), and alleges as follows:

## I.     JURISDICTION & VENUE

1.     This Court has jurisdiction over the subject matter presented by this First Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set

forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of Florida, WALMART can be considered a citizen of Arkansas and NESTLE can be considered a citizen of Virginia.  Based on public sales data and on information and belief, nationwide sales of the Coffee Mate powdered coffee creamer products at issue in this lawsuit over the most recent four year period exceed $1,154,000,000.00; thus, Plaintiff has a good faith basis to plead that the total claims of the Plaintiff Class (Florida residents) exceeds $5,000,000.00, because independent laboratory testing shows over 11% of the claimed servings are not delivered to Plaintiff and the putative class.

2.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendants conduct business in, and may be found in, this district, and Plaintiff purchased the subject Product in this judicial district.

**II.      PARTIES**

3.      Plaintiff is an individual consumer over the age of eighteen (18), who resides in Broward County Florida. Plaintiff seeks injunctive relief and damages on behalf of Plaintiff and the Class, and respectfully requests a jury trial as to damages.

4.      Defendant, WALMART, is one of the largest food and beverage retailers worldwide and maintains its principal executive offices in Bentonville, Arkansas, which at all times material hereto was registered and conducting business in Florida, maintained agents for the customary transaction of business in Florida, and conducted substantial and not isolated business activity within this state.

5.      Defendant, NESTLÊ, is one of the largest food and beverage manufacturers worldwide and maintains its principal executive offices in Arlington, Virginia, which at all

times material hereto was registered and conducting business in Florida, maintained agents for the customary transaction of business in Florida, and conducted substantial and not isolated business activity within this state.

6.      NESTLÊ manufactures, markets, promotes, advertises and sells Coffee Mate powdered coffee creamers, including the Coffee Mate product at issue in this Action, including manufacturing and distributing the Coffee Mate product at issue in this Action for sale at Walmart.

7.      WALMART markets, promotes, advertises and sells Coffee Mate powdered coffee creamers, including the Coffee Mate product at issue in this Action.

8.      The advertising and labeling for the Coffee Mate Original Powdered Coffee Creamer (Net Wt 35.3 Oz) (hereinafter the "Product") purchased by Plaintiff was prepared and/or approved by NESTLÊ and its agents, and was disseminated by NESTLÊ and its agents through advertising and labeling containing the misrepresentations alleged herein.

9.      As a distributor and retailer of the Product, WALMART and its agents disseminated the Coffee Mate Original Powdered Coffee Creamer (Net Wt 35.3 Oz) (hereinafter the "Product") purchased by Plaintiff through advertising and labeling containing the misrepresentations alleged herein.

10.     The advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled reasonable consumers, including Plaintiff and the Class into purchasing the Product.

11.     NESTLÊ markets and distributes the Product and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements about the Product.

12.     WALMART markets and distributes the Product and through its status as a retailer of the Product authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements about the Product.

13.     Plaintiff alleges that, at all times relevant herein, WALMART and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants and employees of WALMART and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

14.     Plaintiff alleges that, at all times relevant herein, NESTLÊ and its subsidiaries, affiliates, and other related entities and suppliers, as well as their respective employees, were the agents, servants and employees of NESTLÊ and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

15.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, WALMART, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations, and that WALMART participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

16.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, NESTLÊ, in concert with its subsidiaries, affiliates, and/or other related entities and suppliers, and their respective employees, planned, participated in and furthered a

4

common scheme to induce members of the public to purchase the Product by means of untrue, misleading, deceptive, and/or fraudulent representations, and that NESTLÊ participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

17.     Whenever reference in this Class Action Complaint is made to any act by WALMART or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of WALMART committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of WALMART while actively engaged in the scope of their duties.

18.     Whenever reference in this Class Action Complaint is made to any act by NESTLÊ or its subsidiaries, affiliates, distributors, retailers and other related entities and suppliers, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of NESTLÊ committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of NESTLÊ while actively engaged in the scope of their duties.

### III.     FACTUAL ALLEGATIONS

19.     On or about February 23, 2021, Plaintiff purchased Coffee Mate Original Powdered Coffee Creamer (Net Wt 35.3 Oz) at a Walmart store located at 2500 W. Broward Boulevard, Fort Lauderdale, FL 33312. A copy of the Receipt is attached hereto as **Exhibit "A."**

20.     The Product is comprised of powdered coffee creamer, provided to consumers for the purpose of mixing with coffee.

5

21.     The Product's front label prominently states that the Product **"Makes Over 500 Servings."** Photographs of the Product are attached hereto as **Exhibit "B."**

22.     Based on this prominent labeling and based on the serving size listed on the Product, a consumer purchasing this Product would reasonably believe that the Product contains **at least 500 servings of powdered coffee creamer.**

23.     Despite this prominent packaging and labeling, the Product does not contain anywhere close to 500 servings of powdered coffee creamer

24.     Since Plaintiff purchased the Product as a product advertising itself as containing at least 500 servings of powdered coffee creamer, and it was not such a product, Plaintiff was damaged in proportion to the servings of powdered coffee creamer not received.

25.     The Product's representations, as outlined and explained above, which are uniformly, consistently and prominently displayed on each individual package of the Product are untrue, misleading and deceive the public.  In making this allegation that the representations on the packaging regarding the number of servings contained in the package are untrue, Plaintiff relies upon independent laboratory testing showing that there are 59 fewer servings than represented, meaning that over 11% of the promised product servings are not delivered to Plaintiff and the putative class.

26.     Plaintiff is aggrieved by the deceptively labeled and marketed Product as she relied on the misleading and deceptive labeling and advertising and was deprived of the benefit of the bargain she reasonably anticipated from the Product's labeling and advertising; specifically, she was deprived of the benefit she paid for a product labeled and advertised as containing at least 500 servings of powdered coffee creamer when in

reality the Product does not contain anywhere near 500 servings. Reasonable consumers, such as the Plaintiff, will continue to be aggrieved by the deceptive and misleading labeling and advertising of the Product, as reasonable consumers will continue to make the plausible connection that they are purchasing a Product containing at least 500 servings of powdered coffee creamer.

27.     Upon information and reasonable belief Defendants could sell the Product without deceptive labeling by, for example, not displaying on the front label any representations about the number of servings of coffee creamer a consumer could expect from the Product.

28.     Alternatively, Defendants could sell the Product with an accurate representation as to the number of servings of powdered coffee creamer contained within the Product.

29.     Defendants unlawfully marketed, advertised, sold, and distributed the Product to Florida purchasers.

30.     Defendants sold the Product at a premium price, and the Product's false and misleading representations deceive Florida consumers for the reasons previously alleged above.

31.     Plaintiff has performed all conditions precedent to bringing this Action.

32.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations, Defendants injured Plaintiff and the other Class members in that Plaintiff and other Class members:

a.  paid a sum of money for the Product that was not as represented;

b.  paid a premium price for the Product that was not as represented;

c. were deprived the benefit of the bargain because the Product they purchased was different than what Defendants warranted;

d. were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendants;

e. did not receive a Product that measured up to their expectations as created by Defendants;

f. purchased a Product that was other than what was represented by Defendants;

g. received a Product that Plaintiff and the other members of the Class did not expect or consent to; and

h. received a Product that was of a lower quality than what Defendants promised.

33. Had Defendants not made the false, misleading, and deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product.

34. Plaintiff and the other Class members would likely purchase the Product again if the deceptive advertising and labeling on the Product were corrected.

35. Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

36. Plaintiff and the other Class members did not obtain the full value of the advertised Product due to Defendants' misrepresentation.

37. Plaintiff and the other Class members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

**Plaintiff's Reliance and Damages**

38.     Plaintiff purchased one or more of the Product in Broward County, Florida, during the Class Period as she purchased the Product on or about February 23, 2021.

39.     The Product purchased by Plaintiff was deceptively advertised and marketed for the reasons previously alleged herein.

40.     With respect to the Product, Plaintiff and members of the Class paid a price premium or received less than they bargained for, because Plaintiff and members of the Class reasonably believed the Product contained at least 500 servings of powdered coffee creamer as specified on the label and in the advertising, not significantly less.

41.     Likewise, if Plaintiff and members of the Class had known that the Product did not contain at least 500 servings of powdered coffee creamer as specified on the label and in the advertising, they would not have purchased the Product.

42.     The Product is worth less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

43.     Pursuant to Rule 1.220, *Florida Rules of Civil Procedure*, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **All persons throughout Florida, who, within the four years preceding the filing the original Complaint ("Class Period"), purchased one or more containers of the Product for personal use and not resale ("Class").**

44.     Excluded from the Class are Defendants, their subsidiaries, affiliates, and employees; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge(s) to whom this case is assigned and any immediate

9

family members thereof.

45.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those claims in individual actions alleging the same claims.

## A. Numerosity

46.     The members of the Class are so numerous that individual joinder of all class members is impracticable.

47.     The precise number of members of the Class is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network throughout Florida.

48.     Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

## B. Commonality and Predominance

49.     This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class.  All members of the Class were exposed to Defendants' deceptive and misleading advertising and marketing claims alleged herein.

50.     Furthermore, common questions of law or fact include:

a.  whether Defendants engaged in the conduct as alleged herein;

10

b.  whether Defendants' practices violate applicable law cited herein;

c.  whether Plaintiff and the other members of the Class are entitled to actual, statutory, or other forms of damages, and/or other monetary relief; and

d.  whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

51.     Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually, and on behalf of the other members of the Class. Materially identical business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

## C. Typicality

52.     Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the same uniform misconduct described herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff's.

## D. Adequacy of Representation

53.     Plaintiff is an adequate representative of the members of the Class because Plaintiff's interests do not conflict with the interests of the other members of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they

have sought to protect consumers from fraudulent and deceptive practices.

### E. Declaratory and Injunctive Relief

54.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

### F. Superiority

55.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.  Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

56.     By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the members of the Class' claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT, FLA STAT. § 501.201 et seq.**
**(versus WALMART and NESTLÊ)**

57.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

58.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes.*

59.     The express purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Section 501.202(2), *Florida Statutes*.

60.     Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

61.     The sale of the Product at issue in this cause was "consumer transactions" within the scope of FDUTPA.

62.     Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes.*

63.     Defendants' Product is a good within the meaning of FDUTPA and Defendants are engaged in trade or commerce within the meaning of FDUTPA.

64.     Defendants' unfair and deceptive practices are likely to mislead— and have misled—reasonable consumers, such as Plaintiff and members of the Class, and therefore, violate Section 500.04, *Florida Statutes*.

65.     Defendants have violated FDUTPA by engaging in the unfair and deceptive

13

practices described above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

66.     Specifically, Defendants marketed, labeled and advertised the Product in a deceptive, false and misleading manner since the representations contained on the Product cause reasonable consumers of the Product to believe the Product contains at least 500 servings of powdered coffee creamer as specified in the advertising and on the label.

67.     Plaintiff and Class Members have been aggrieved by Defendants' unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendants' deceptively labeled and marketed Product.

68.     Reasonable consumers rely on Defendants to honestly market and label the Product in a way that does not deceive reasonable consumers into believing they are purchasing a Product that contains at least 500 servings of powdered coffee creamer as specified on the label and in the advertising, when the truth is that the Product contains far less than that amount.

69.     Defendants have deceived reasonable consumers, like Plaintiff and the Class, into believing the Product was something it was not.

70.     Plaintiff and the Class suffered damages and are entitled to injunctive relief.

71.     Pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for damages, attorney's fees, and costs. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants.  Additionally, pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek injunctive relief for, *inter*

*alia*, the Court to enjoin Defendants' above-described wrongful acts and practices, and for restitution and disgorgement.

72.     Plaintiff seeks all available remedies, damages, and awards resulting from Defendants' violations of FDUTPA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

A.     For an order certifying that the Action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys as Class counsel;

B.     For an award of equitable relief for all causes of action as follows:

1.     Enjoining Defendants from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate FDUTPA or the other causes of action as set forth above;

2.     Restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive act or practices; and

C.     For actual damages in an amount to be determined at trial for all causes of action;

D.     For an award of attorney's fees and costs;

E.     For any other relief the Court might deem just, appropriate, or proper; and

15

F.      For an award of pre and post-judgment interest on any amounts awarded.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Submitted this 23rd day of July 2021

SOUTHERN ATLANTIC LAW GROUP, PLLC

By:  s/Lydia S. Zbrzeznj
        Lydia S. Zbrzeznj
        Florida Bar No. 98181
        Nicholas T. Zbrzeznj
        Florida Bar No. 98180
        99 6th Street SW
        Winter Haven, FL 33880
        Telephone: (863)656-6672
        Facsimile: (863)301-4500
        Emails: lydia@southernatlanticlaw.com
        nick@southernatlanticlaw.com
        kara@southernatlanticlaw.com
        mark@southernatlanticlaw.com
        ATTORNEYS FOR PLAINTIFF

        Joel Oster
        Of Counsel
        The Law Office of Howard W. Rubinstein P.A.
        1281 N. Ocean Dr. Apt. 198
        Singer Island, FL 33404
        Telephone: 832-715-2788
        Fax: 561-688-0630
        Emails: howardr@pdq.net
        ATTORNEY FOR PLAINTIFF

        L. DeWayne Layfield, Esq.
        Law Office of L DeWayne Layfield, PLLC
        P.O. Box 3829
        Beaumont, Texas 77704
        Telephone: 407-832-1891
        Fax: 866-280-3004
        Email: dewayne@layfieldlaw.com
        ATTORNEY FOR PLAINTIFF

16