IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JULIA YONAN AND
TERRANCE CORRIGAN,

    *Plaintiff,*

v.

WALMART, INC., and NESTLÉ USA, INC.,

    *Defendants*.
_____/

Case No. 0:21-cv-61443-WPD

## ORDER ON MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion to Dismiss [DE 25] ("Motion"). The Court has carefully considered the Motion, the Response [DE 35], and the Reply [DE 36] thereto. The Court has also considered Defendants' Request for Judicial Notice [DE 28], the Response [DE 31], and Reply [DE 37] thereto, and the Parties' arguments at the March 10, 2022 hearing on this matter. The Court is otherwise fully advised in the premises.

### I. BACKGROUND

In the Second Amended Complaint, Plaintiffs Julia Yonan ("Yonan") and Terrence Corrigan ("Corrigan") (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated in Florida, bring claims against Defendants Walmart, Inc. ("Walmart") and Nestlé USA, Inc., ("Nestlé") (collectively, "Defendants") for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"). *See* Second Am. Compl. [DE 23] (hereinafter "SAC"). Specifically, Plaintiffs allege that each Defendant engaged in deceptive and/or unfair trade practices by deceptively marketing, labeling, advertising, and

1

selling Coffee Mate original powdered coffee creamer product, including the 35.3 ounce version purchased by each of the Plaintiffs in this action.

According to the Second Amended Complaint, Defendant Nestlé manufactures, markets, promotes, advertises, and sells Coffee Mate powdered coffee creamers, including manufacturing and distributing the Coffee Mate product at issue in this action. SAC ¶ 7. Defendant Walmart also markets, promotes, advertises, and sells Coffee Mate powdered coffee creamers, including the Coffee Mate product at issue in this action. SAC ¶ 8.

On or about February 23, 2021, and sometime after July 1, 2021, respectively, Plaintiffs Yonan and Corrigan purchased Coffee Mate Original Powdered Coffee Creamer (the "Product") at a Walmart store in Broward County, Florida. SAC ¶¶ 20–21. Attached to the Second Amended Complaint as Exhibit B is a copy of the label of the Product each Plaintiff allegedly purchased. *See* Ex. B [DE 23-2]. The Product's label states that it contains "[a]bout 500 servings" and the Product's nutrition panel defines a serving as "1 tsp (2g)." See Ex. B; SAC ¶¶ 23–24. In other words, Plaintiffs contend that a consumer purchasing this Product would reasonably believe it contains at least 500 1-teaspoon servings of powdered coffee creamer. SAC ¶ 25. Plaintiffs allege, however, that according to their own expert testing incorporated as Exhibit C into the Second Amended Complaint, the Product does not contain 500 1-teaspoon servings of powdered coffee creamer and instead contains 383.3 servings, constituting a shortage of 23.3% of the promised servings. SAC ¶¶ 28, 42; Ex. C [DE 23-3]. Plaintiffs allege that had they known the Product did not contain the promised servings, they would not have purchased it. SAC ¶¶ 46–47, 77. As result of the Product's false, misleading, and deceptive representations, Plaintiffs and putative class members have been injured. SAC ¶¶ 48–49.

Through correspondence dated June 1, 2021, and delivered June 7, 2021, Plaintiff Yonan provided notice of the Product's deceptive labeling, including Plaintiffs' independent laboratory testing, to Walmart's legal department. SAC ¶ 32; Ex. D [DE 23-4]. Despite this purported knowledge, Plaintiffs allege that Walmart continued to market, advertise, sell, and profit from the Product. SAC ¶¶ 33–34.

Based on these allegations, Plaintiffs bring a two count Second Amended Complaint. In the First Cause of Action, both Plaintiffs alleges a claim under FDUTPA against Nestlé on behalf of themselves and a putative class of Florida consumers. SAC ¶¶ 79–92. In the Second Cause of Action, Plaintiff Corrigan alleges a claim under FDUTPA against Walmart on behalf of himself and a putative class of Florida consumers. Plaintiffs seek to enjoin Defendants from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the Product as well as obtain declaratory relief and a judgment for damages and reasonable attorneys' fees.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any

theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

### III. DISCUSSION

Defendants' Motion to Dismiss [DE 25] seeks to dismiss all claims in Plaintiffs' Second Amended Complaint [DE 23] pursuant to Federal Rule of Civil Procedure 12(b)(6). In adjudicating the Motion to Dismiss, Defendants request that the Court take judicial notice of "(1) the label of Nestlé's 35.3 ounce Coffee Mate Original powdered coffee creamer at issue in this action, and (2) the fact that the label pictured in Exhibits 1 and 2 to the Sunday Declaration was the only label available for purchase at Walmart 'on or after July 1, 2021,'" when Plaintiff Corrigan allegedly purchased the Product. [DE 28] at 1.

#### A. Defendants' Request for Judicial Notice

Defendants, throughout their Motion to Dismiss, rely on documents outside the four corners of the complaint. This includes the Declaration of Sarah A. Sunday and the three exhibits attached thereto, which purportedly show the front and back labels as it appeared on the product Plaintiff Corrigan would have purchased (Exhibits 1 and 2) and the front label as it appeared on the product that Plaintiff Yonan likely would have purchased (Exhibit 3). Defendants separately move for the Court to take judicial notice of the Product's labels and the fact that the label

4

pictured in Exhibits 1 and 2 to the Sunday Declaration was the only label available for purchase at Walmart on or after July 1, 2021. Defendants argue that this Court may consider the exhibits appended to the Sunday Declaration because they provide clearer, more complete images of the two labels incorporated into Plaintiffs' Second Amended Complaint and are undisputedly authentic and central to Plaintiff Corrigan's FDUTPA claims.

Plaintiffs request that the Court not consider these documents. In particular, Plaintiffs argue that the Court cannot accept as undisputable and true the affidavit of Nestlé employee Sunday regarding her opinion about a photograph of a Coffee Mate powdered coffee creamer label attached thereto. Plaintiffs argue that Sundays' opinions are double hearsay and the date Sunday opines the label was not available for sale in Walmart is an estimate purportedly based on numerous unidentified and unattached documents. According to Plaintiffs, the label provided by Defendants in Exhibit 1 contains an asterisk explanation stating "[a]bout 500 2 gram servings," which were not contained on the label of the Product alleged to be purchased by Plaintiffs. *Compare* [DE 23] Ex. B *with* [DE 28] Ex. 1. Plaintiffs note Sunday is not a Walmart employee and her conclusions are based on estimations. Additionally, Plaintiffs contend that they reasonably dispute the matters which Defendants seek to have the Court judicially notice; therefore, under applicable case law, these documents cannot be considered on a motion to dismiss.

Typically, in considering a motion to dismiss, a court's review is confined to the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009). An exception exists for documents that were not attached to the complaint if they are central to a plaintiff's claim and their authenticity is undisputed. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). "[W]here the plaintiff refers to certain

5

documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.*

Under Federal Rule of Evidence 201, "[c]ourts can take notice of certain facts without formal proof but only where the fact in question is 'one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (citing Fed. R. Evid. 201(b)). "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Id.*

Here, the Court declines to exercise its discretion to take judicial notice. Rather than simply asking the Court to take judicial notice of the fact that Nestlé issued the new label, Defendants are asking the Court to take judicial notice of, and therefore accept as undisputed, the fact that the new label was the only label in Walmart's inventory as of July 2021. The conclusions drawn from Sunday's affidavit—including whether the new label was the only label sold at Walmart after July 1, 2021—are highly disputed by Plaintiff. The Court will take judicial notice of the fact that Nestlé issued the label. However, the Court will not take judicial notice of the contents of the Sunday Declaration and any conclusions or statements contained within, including that the fact that the label pictured in Exhibits 1 and 2 to the Sunday Declaration was the only label available for purchase at Walmart on or after July 1, 2021. Though the Court

recognizes that there may be inconsistencies among Plaintiffs' exhibits with regards to the asterisk statement, the issue is a factual one more properly addressed at trial or summary judgment.

**B. Florida Deceptive and Unfair Trade Practices Act Claims**

Defendants seek dismissal of Plaintiffs' FDUTPA claims for various reasons. First, Defendants argue that Plaintiffs fail to allege deception because Plaintiffs do not and cannot claim that the Product contains fewer than 500 2-gram servings and Plaintiffs' legal theory is otherwise preempted by federal law. Second, Defendants argue that the front and back label Corrigan purchased clarifies any potential confusion about the serving size. Third, Defendants contend that Corrigan fails to allege an unfair or deceptive practice by Walmart because Walmart merely sold a Nestlé product and FDUTPA expressly exempts retailers like Walmart from liability. Finally, Defendants argue Plaintiffs lack standing to sue Defendants for injunctive or declaratory relief. The Court addresses each argument in turn.

1. *Whether Plaintiffs Adequately Allege Deception*

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is designed to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting Fla. Stat. § 501.202(2)). To sustain a FDUTPA claim, a plaintiff must show "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *see also Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1351 (S.D. Fla. 2017); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1223 (S.D. Fla. 2013). Although FDUTPA does not

explicitly define the term "deception," the provisions of the Act are to be "construed liberally." Fla. Stat. § 501.202. Courts have determined that a deceptive practice occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and quotation omitted); *see also Rollins*, 951 So. 2d at 869 ("A deceptive practice is one that is 'likely to mislead' consumers."). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick*, 480 F.3d at 1284 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).

As an initial matter, Defendants urge the Court to require Plaintiffs to abide by the heightened pleading requirements of Fed. R. Civ. P. 9(b) because Plaintiffs' FDUTPA claim contains averments of fraud. While the Court acknowledges that courts within this district have reached various conclusions about the application of Rule 9(b) to FDUTPA claims, this Court has previously held that Rule 9(b) does not apply to FDUTPA claims. *See Sanchez–Knutson v. Ford Motor Co.,* 52 F.Supp.3d 1223, 1239 (S.D. Fla. 2014) (citing *Toback v. GNC Holdings, Inc.,* 2013 WL 5206103, *2 (S.D. Fla. Sept. 13, 2013)).

The parties' dispute and the allegedly deceptive practice centers on the proper serving size for the Coffee Mate Product. Defendants argue that the label undisputedly states that the serving size is "1 tsp (2 g)" and the container holds 1 kg (or 1000 grams) of coffee creamer. *See* SAC, Ex. B. According to Defendants, because the serving size is a 2-gram teaspoon's worth of product and 1000 divided by 2 equals 500, the estimate of "[a]bout 500 servings per container" as advertised on the label is entirely accurate. SAC ¶ 23. Defendants argue that the federal Food & Administration ("FDA") regulations support Nestlé's 2-gram teaspoon argument because the

8

FDA has determined that the reference amount customarily consumed ("RACC") per eating occasion of "[c]ream or cream substitutes, powder" is 2 grams. 21 C.F.R. § 101.12(b). Defendants point out that the FDA provides that the "reference amount[] shall be used as the basis for determining [serving size]." *Id.* Therefore, Defendants contend, Nestlé's 500 2-gram serving label is consistent with FDA RACC and serving size regulations.

Plaintiffs reject Defendants' 2-gram serving size argument. According to Plaintiffs, the central issue is whether the Product is capable of making 500 1-teaspoon servings. Plaintiffs further contend that Defendants misunderstand FDA regulations. Specifically, Plaintiffs assert that the label statement is separate and distinct from the RACC, which is only "the basis for determining serving sizes." 21 C.F.R. § 101.12(b).

FDA regulations require "all nutrient and good component quantities . . . [to] be declared in relation to a serving." 21 C.F.R. § 101.9(b). A "serving" is defined as "an amount of food customarily consumed per eating occasion by persons 4 years of age or older which is expressed in a common household measure that is appropriate to the food." 21 C.F.R. § 101.9(b)(1). Further, "a label statement regarding a serving shall be the serving size expressed in common household measures . . . and shall be followed by the equivalent metric quantity in parenthesis (fluids in milliliters and all other foods in grams)." 21 C.F.R. § 101.9(b)(7).[1] According to Plaintiffs, this authority makes clear that "serving" is a common household measure such as a teaspoon, not a metric measure such as grams. Therefore, Plaintiffs argue Nestlé is required to express the serving size in a common household measure and to report the metric measure equivalent thereof, not the other way around.

---

[1] "The gram or millimeter quantity equivalent of the household measure should be rounded to the nearest whole number except for quantities that are less than 5 g (mL). The gram (mL) quantity between 2 and 5 g (mL) should be rounded to the nearest 0.5 g (mL) and the g (mL) quantity less than 2 g (mL) should be expressed in 0.1-g (mL) increments." 21 C.F.R. § 101.9(b)(7)(ii).

Here, the Product label at issue unambiguously states that the serving size is "1 tsp (2 g)" and that the product contains "[a]bot 500 servings per container." SAC ¶¶ 23–24, Ex. B. According to Plaintiffs, 23.3% of the servings are missing from the Product when following the instructions of one serving equating to one teaspoon. SAC ¶ 28. The Second Amended Complaint and Exhibit C attached thereto make clear that Plaintiffs' allegation that the product contains fewer than 500 servings is based on a teaspoon weight of 2.6 grams, not 2 grams. *See* SAC Ex. C at 4 ("The Coffee Mate powder had an average weight of 2.6g (+/- 0.10g) which was higher than the 2g teaspoon printed on the package nutrition facts label.") (internal citation omitted); SAC ¶ 28 (incorporating Plaintiff's expert testing of the product into the Second Amended Complaint as Exhibit C); SAC ¶ 58. Yet Plaintiffs argue that it is precisely this difference in weight that caused the alleged deficiency. Therefore, the question becomes whether this alleged difference in weight can form the basis of a FDUTPA claim. The Court finds that it does.

FDA guidance expressly referenced in the Second Amended Complaint outlines the process product manufacturers must follow to determine a specific serving size for their product. SAC ¶¶ 60–70. According to FDA guidance, the process for determining the appropriate serving size and number of servings consists of three steps. *See* Food and Drug Administration, *Guidance for Industry: A Food Labeling Guide* at 48, https://www.fda.gov/media/81606/download (Rev. January 2013). First, "[l]ocate the appropriate food category and [RACC] for your product in the two tables in Section *101.12(b)* of the food labeling regulations." *Id.* at 48. The FDA has determined that the RACC per eating occasion of "[c]ream or cream substitutes, powder" is 2 grams. 21 C.F.R. § 101.12(b). Second, "[d]etermine the serving size for your multi-serving product using the RACC for the product." Food and Drug

Administration, *Guidance for Industry: A Food Labeling Guide* at 49 (Rev. January 2013) (citing 21 C.F.R. § 101.9(b)(2), (3), and (4)). FDA regulations provide that "[f]or nondiscrete bulk products (e.g., breakfast cereal, flour, sugar, dry mixes, concentrates, pancake mixes, macaroni and cheese kits), . . . the serving size shall be the amount in household measure that most closely approximates the [RACC] for the product category." 21 C.F.R. § 101.9(b)(2)(iii). The final step requires manufacturers to "[u]se the information in 21 C.F.R. 101.9(b)(8) to determine the number of servings and the appropriate rounding rules for numbers of servings." Food and Drug Administration, *Guidance for Industry: A Food Labeling Guide* at 49 (Rev. January 2013). "Determination of the number of servings per container shall be based on the serving size of the product." 21 C.F.R. § 101.9(b)(8).

Assuming Plaintiff's expert testing is accurate, which the Court is required to do at this juncture, a reasonable consumer could be misled into purchasing Nestlé's Product based on the serving size and number of servings as presented on Nestlé's packaging. Plaintiffs clearly allege this when they state that Plaintiffs reasonably anticipated that the Product would contain 500 1-teaspoon servings when in fact, it did not. *See, e.g.*, SAC ¶¶ 29–30, 37, 38, 42. Defendants do not dispute the FDA regulations underlying Plaintiffs' theory. *See* [DE 36] at 4. Rather, Defendants argue that if a teaspoon weighs 2.6 grams as Plaintiffs allege, the common household measure closest to the 2-gram RACC is 3/4 a teaspoon, *see* 21 C.F.R. § 101.9(b)(5)(i), which would make the metric equivalent thereof 1.95 grams (i.e., 2.6 grams times 3/4). *Id.* Because FDA regulations require a gram equivalent to the household measure of less than 2 grams to "be expressed in 0.1-g increments," Defendants argue, the metric measurement of the Product is 2 grams, the exact amount listed on the label. 21 C.F.R. § 101.9(b)(7)(ii).

Defendants' argument defies logic. The Product label at issue unambiguously states that the serving size is "1 tsp (2 g)." SAC, Ex. B. Whether the Court accepts Plaintiffs' characterization that the Product represented that it contained 500 1-teaspoon servings when it did not, or Defendants' characterization that the Product contained 500 3/4-teaspoon servings weighing 2 grams each, the result would be no different: the Product label would violate 21 C.F.R. § 101.9(b)(2)(iii) because a 3/4-teaspoon serving is the household measure that most closely approximates the RACC, not the 1-teaspoon serving size listed on the label. Accordingly, Defendants' assertion that the 2-gram metric measurement is accurate based on a 3/4-teaspoon household measurement is merely an alternative way of describing how the Product label is allegedly deceptive or misleading. Thus, regardless of the characterization, the allegations in the Second Amended Complaint clearly set forth an act which Plaintiffs believe are deceptive, thereby satisfying the first element of their FDUTPA claims.

2. *Whether Plaintiffs' FDUTPA Claims are Preempted by FDA Regulations*

As an initial matter, the Court notes that Defendants' preemption argument was raised for the first time in the reply, and therefore the Court need not consider the argument. *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir.1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *Miccosukee Tribe Of Indians Of Fla v. United States*, 574 F. Supp. 2d 1360, 1367-68 (S.D. Fla. 2008) *aff'd sub nom. Miccosukee Tribe of Indians of Florida v. United States*, 619 F.3d 1286 (11th Cir. 2010) (ignoring arguments in reply brief exceeding the scope of the motion and response).

However, even if it were to consider Defendants' preemption arguments, the Court is doubtful that Plaintiffs' FDUTPA claims as pled are preempted by FDA regulations. The federal Food, Drug, and Cosmetic Act ("FDCA") expressly preempts state laws that "directly or indirectly establish . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)." 21 U.S.C. § 343-1(a)(4). Section 343(q) empowers the FDA to promulgate regulations for "the number of servings . . . per container." 21 U.S.C. § 323(q)(1)(B). Because the Product label at issue is governed by 21 U.S.C. § 343, Plaintiffs cannot maintain state law claims that would require additional labeling if the packing at issue is fully compliant with the FDCA and its related regulations. There is no prohibition, however, on a state law claim based upon packaging that also violates the FDCA. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 116 (2014) ("It is unlikely that Congress intended the FDCA's protection of health and safety to result in less policing of misleading food and beverage labels than in competitive markets for other products."); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 448 (2005) (holding that express preemption of different requirements "does not preclude States from imposing different or additional *remedies*, but only different or additional *requirements*") (emphasis in original).

Defendants argue that pursuant to 21 C.F.R. § 101.9(g)(7), compliance with the FDA regulation is "based on the metric measure specified in the label statement of serving size." Therefore, Defendants argue, even if a teaspoon of the Product weighs 2.6 grams, federal regulations dictate that the number of servings is 500. Defendants appear to argue that a claim that the Product contains any serving amount other than that expressed on the label would be preempted by the FDA's requirement that compliance be measured by the metric measured listed in the label serving size. But Defendants do not explain how this requirement eliminates

13

Plaintiffs' remedy for a mislabeled serving size or serving amount. It would be incongruous, to say the least, to require a manufacturer to calculate the number of servings based on the metric equivalent of a serving size expressed in a common household measure, but still permit it to use a purportedly misleading figure for the household measure itself.

   3. *Whether the Second Amended Complaint Properly Alleges the Label Corrigan Bought*

Defendants further argue that Plaintiff Corrigan's allegations fail because the product he purchased "assuredly included" an asterisk statement informing him the serving size was an estimate based on "[a]bout 500 2 gram servings." Defendants' argument is premised upon the arguments outline in their Request for Judicial Notice. As the Court stated *supra*, the Court will not take judicial notice of the contents of the Sunday Declaration and any conclusions or statements contained within, including the contention that the label pictured in Exhibits 1 and 2 to the Sunday Declaration was the label Corrigan purchased. Though the Court recognizes that there may be inconsistencies among Plaintiffs' exhibits with regards to the asterisk statement, the Court declines to conduct such a factual inquiry at this stage in the litigation.[2] *See Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1231 (M.D. Fla. 2017) (declining to conduct a fact-intensive inquiry or draw inferences in favor of a Defendant to determine that certain statements were not false when adjudicating a motion to dismiss).

Additionally, Defendants argue that the Second Amended Complaint never alleges what label Corrigan purchased. Of particular concern to Defendants is Plaintiffs' failure to allege whether Corrigan's product includes an asterisk statement or, alternatively, attach a photograph

---

[2] Defendants state that if the Court is not inclined to consider the asterisk label at this time, Defendants request the Court order Plaintiff Corrigan to attach a photo of the actual product he purchased to a future amended complaint. First, Plaintiffs allege that label identified in Exhibit B is the label Corrigan allegedly bought. Second, the Court declines to impose such an evidentiary burden at the pleading stage.

of the actual product Corrigan allegedly purchased. According to the Second Amended Complaint, "[s]ometime after July 1, 2021, Plaintiff, Corrigan, purchased the largest cannister of the Coffee Mate Original Powdered Coffee Creamer product from a Walmart in Broward County, Florida. Upon information and belief, the largest cannister sold by Walmart is the Coffee Mate Original Powdered Coffee Creamer product (Net Wt. 35.3 Oz)." SAC ¶ 21. "The Product's front label prominently states that the Product contains '500 Servings.' Photographs of the Product's label and nutrition panel are attached hereto as Exhibit 'B.'" SAC ¶ 23. The Court finds that Defendants have received fair notice of the claims and the grounds upon which they rest. Whether the product Corrigan purchased contains an asterisk statement is not requirement to plead a FDUTPA claim and the Court declines to impose such a requirement at the pleading stage.

Further, to the extent that Defendants take issue with the fact that Corrigan relies on "information and belief" regarding the Coffee Mate product he purchased, such a concern would not be a basis for dismissal. *Latele Television C.A. v. Telemundo Commc'ns Grp., LLC,* No. 12–22539–CIV, 2013 WL 1296314, at *11 (S.D. Fla. Mar. 27, 2013) ("[T]he mere fact that a complaint includes allegations asserted on information and belief is not, in and of itself, a basis for dismissal.") (citing *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)). Indeed, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the belief is based on factual information that makes the inference of culpability plausible." *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.,* No. 12–80393–CIV, 2013 WL 1176252, at *3 (S.D. Fla. Mar. 20, 2013) (citing *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). The Court finds Corrigan's allegations sufficient at

this stage of the litigation to raise a reasonable inference of culpability. Therefore, the Court will not dismiss Corrigan's claims on this basis.

    4. *Whether Plaintiff Corrigan Can State a Claim Against Walmart*

Defendants argue that Plaintiff Corrigan fails to allege an unfair or deceptive practice by Walmart because, apart from conclusory allegations and the allegations that lump together Walmart and Nestlé, the Second Amended Complaint merely alleges that Walmart sold a Nestlé product. Defendants further argue FDUTPA expressly exempts retailers like Walmart from liability.

In response, Plaintiffs contend that the Second Amended Complaint alleges that Walmart had actual knowledge that it was marketing, promoting, advertising, and selling the deceptively labeled product because of a June 7, 2021 letter sent by Yonan to Walmart. *See* SAC ¶¶ 13, 16, 33–34, 36, 44, 47. Plaintiffs assert that because the Second Amended Complaint properly alleges Walmart had actual knowledge, Defendants' arguments fail. Defendants, for their part, argue that the label pictured in Yonan's letter was not even sold in Walmart stores on or after July 1, 2021, when Corrigan allegedly bought the Product. Defendants also assert that the letter fails to inform Walmart that the product contains fewer than 500 2-gram servings.

FDUTPA prohibits recovery of damages, fees, or costs "against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part." Fla. Stat. § 501.211(2). Thus, a consumer suing a retailer under FDUTPA must allege that the retailer had actual knowledge it was violating the act. *See Herazo v. Whole Foods Mkt., Inc.*, 2015 WL 4514510, at *3 n.2 (S.D. Fla. July 14, 2015).

16

When addressing a motion to dismiss the Court must accept all factual allegations as true and make all reasonable inferences in favor of the non-moving party. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004). Here, Plaintiffs have not merely alleged Walmart sold the Product. Plaintiffs have specifically alleged Walmart obtained actual knowledge of the Product's allegedly deceptive labeling upon receipt of Plaintiff Yonan's June 7, 2021 letter [DE 23-4] but nevertheless continued to market, promote, advertise, and sell the Product both in stores and online. *See, e.g.*, SAC ¶¶ 13, 16, 33–34, 36, 44, 47, 117. Concluding that these allegations are insufficient because Corrigan could not have purchased the product with the same label included in the letter would require the Court to conduct a fact-intensive inquiry and draw inferences in favor of Defendant Walmart. *See Incarcerated Entm't, LLC*, 261 F. Supp. 3d at 1231. Moreover, the Court has already rejected Walmart's 500 2-gram serving size argument. *See supra*. Taking all allegations as true and drawing all inferences in favor to Plaintiffs, Plaintiffs' allegations raise a plausible inference that Walmart had actual knowledge it was violating FDUTPA.[3]

5. *Whether Plaintiffs Lack Standing to Sue for Injunctive or Declaratory Relief*

Finally, Defendants assert that Plaintiffs Yonan and Corrigan lack standing to pursue injunctive or declaratory relief because they fail to allege any real and immediate threat of future harm. In response, Plaintiffs argue that have properly alleged that they may purchase the Product

---

[3] The Court is also unpersuaded by the cases provided by Defendants, which do not involve FDUTPA or allegations that the retailer had actual knowledge. *See, e.g., Cohn v. Kind, LLC*, No. 13 CIV. 8365 (AKH), 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015); *Wing Enterprises, Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 966 (D. Minn. 2021); *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 219 (E.D.N.Y. 2004).

again if they believe the labeling has been corrected. *See* SAC ¶ 52. Because they have no way of knowing when this will occur, and because Defendants continue to advertise, market, and sell the deceptively labeled Product, Plaintiffs allege they face imminent future injury. SAC ¶¶ 53–54. These allegations are insufficient to allege the possibility of future harm.

"[T]o satisfy Article III, a Plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury, and past harm will not suffice." *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 470 (S.D. Fla. 2018). "The injury-in-fact demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future.'" *Ohio State Troopers Association, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1223 (S.D. Fla. 2018) (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013)). The same applies to a request for declaratory relief. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove 'a real and immediate— as opposed to merely hypothetical or conjectural—threat of *future* injury.'") (emphasis in original) (citation omitted).

Like *Sorin* and other case law cited by Defendants, Plaintiffs allege they will only purchase the Product if the mislabeling is rectified. *See Sorin v. Folger Coffee Co.*, No. 20-80897-CV, 2021 WL 5545292, at *2 (S.D. Fla. Mar. 5, 2021); *see also Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) (finding that the Plaintiffs lack standing despite an allegation that they would continue to purchase the Defendant's products if they could rely on the truthfulness of the Defendant's labeling). This is not sufficient to allege that there is a likelihood of future injury. Recognizing this, Plaintiffs allege that they "have no way of knowing

if or when Nestlé makes changes to the Product and whether the Product's labeling remains deceptive," suggesting that future injury is possible. SAC ¶ 54. The Court finds this allegation far too speculative to merit injunctive or declaratory relief.[4] Thus, the requests for injunctive and declaratory relief are due to be dismissed.

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Request for Judicial Notice [DE 28] is **DENIED**.

2. Defendants' Motion to Dismiss [DE 25] is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order.

3. Plaintiffs' requests for injunctive and declaratory relief are dismissed.

4. Defendants shall file an answer to the remainder of Plaintiffs' Second Amended Complaint on or before **March 25, 2022**.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida this 11th day of March, 2022.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
All Counsel of Record

---

[4] In response to Defendants' Request to Take Judicial Notice and the March 10, 2022 hearing, Plaintiff affirmatively produced a Coffee Mate product in which the nutritional fact panel lists ¾ teaspoon as the serving size. *See* [DE 31-2]. This label further supports a finding that Plaintiffs have pled only hypothetical and conjectural future injury.